[Crim. No. 5520. Second Dist., Div. Three. June 28, 1956.]

THE PEOPLE, Respondent, v. WILLIAM JACKSON GLANCY, Appellant.

Morris Lavine for Appellant.

Edmund G. Brown, Attorney General, and Rudolph Pacht, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant was charged with Violation of Dangerous Weapons' Control Law of 1923, in that he unlawfully had in his possession a .38 caliber revolver, he having been previously convicted of a felony (passing weapon into state penitentiary). He admitted allegations in the information that he had been convicted of three felonies (manslaughter, grand larceny, and issuing fraudulent check) and had served terms therefor in state prisons. In a trial by jury he was found guilty. He appeals from the judgment and the order denying his motion for a new trial.

Appellant's assignments of error are: insufficiency of the evidence; certain evidence was unlawfully obtained; errone-

ous rulings as to admissibility of evidence; undue limitation of cross-examination of prosecution witnesses; judge erred in threatening, in the presence of the jury, to hold defense counsel in contempt of court; and prejudice resulting to defendant by failure of prosecution to produce defendant's brother as a witness.

■ Miss Smith, a resident of Hollywood, had known defendant about 10 years. She was employed by defendant three weeks during parts of July and August, 1954. Thereafter they became partners in a business referred to as a horse racing information club. Some of the business was conducted at San Ysidro and at her apartment in Hollywood. In December, 1954, they had arguments about the partnership and money matters. She claimed that he owed money to her, and he claimed that she had improperly taken money from the business. She testified that about December 21, 1954, at her apartment in Hollywood, defendant nearly broke her nose, and threatened to kill her—he said he would shoot her between the eyes; he had threatened her in a similar manner a few weeks previously at San Ysidro; as a result of the injury to her nose she was treated by a physician; she had to stay away from her apartment to feel safe; she changed her telephone number to an unlisted number; about December 23, 1954, she made a complaint (for battery) against defendant at the city attorney's office; she was forced to dismiss the complaint because defendant called her about an hour before the time set for the hearing and told her that if she went through with it she would not live to see the rest of the day.

Defendant's brother, Leonard Glancy, resided in San Francisco and operated a bar there. Defendant was in San Francisco for several days preceding February 17, 1955, and during that time he saw and talked with his brother Leonard.

About February 16, 1955, Miss Smith received a telegram, as follows: "Ruby, call me immediately, Mission 76077. Very important. Concerning Bill. Your friend. Leonard." On direct examination she testified that she called that telephone number in San Francisco, had a conversation with Leonard Glancy, defendant's brother, and received information concerning the defendant; after that conversation she notified the police department of Los Angeles. On cross-examination defendant's counsel asked her if she went to the police department with the telegram. She replied that she did. He asked her if she was afraid when she went to the police. She

replied that she was afraid because her life was threatened. He asked her what made her feel that her life was threatened. She replied, "I received a message from Mr. Leonard Glancy that Mr. Bill Glancy was on his way down to my apartment with a loaded revolver, to get me." He asked her how she received the message. She replied, "By telephone."

Miss Smith also said, on cross-examination, that on February 17, 1955, and before defendant was arrested on that day, she talked with defendant by telephone; she called him—the telephone supervisor having told her (on her unlisted telephone) that there was an emergency call for her from a certain person (a name unfamiliar to Miss Smith) to call a certain number immediately.

On February 17, 1955, about noon, five police officers of Los Angeles were "staked out" near the apartment of Miss Smith awaiting the arrival of defendant. Officer Weil, a police officer of Los Angeles, testified that, on information that he had concerning the commission of a felony, he arrested defendant at 2224½ Cahuenga Boulevard; he (officer) saw defendant drive an automobile "into the address"; by the time he (officer) arrived at the "scene," from across the street, defendant was getting out of the car—one leg was in the car and the other leg was out; the revolver (Exhibit 2), when he first saw it, was in a small suitcase on the floor of the automobile beneath the dashboard; the revolver at that time (while it was in the suitcase) was wrapped in a dishtowel; the revolver had five "live cartridges" in it; he looked for fingerprints on the revolver, but he did not see any; he kept the revolver in his possession until he arrived at the police station; he made a report showing the serial number of the revolver; there was clothing in the suitcase; there were other suitcases and personal belongings of defendant in the rear seat of the car.

Mrs. Glancy, wife of Leonard Glancy, testified that defendant was at her home in San Francisco for approximately three weeks before February 16, 1955, and he slept there at nights during that time; about a week before February 16, she saw a gun in a drawer in a linen chest in her bedroom; the gun was similar to Exhibit 2 (a .38 revolver); she said to defendant, "I would rather you get this gun out of my house. I don't want it in here."; he took the gun out immediately. On cross-examination she said that her husband had had a gun about eight years; he is permitted to carry

the gun when he goes to his place of business; the last time she saw that gun was after she had seen a gun, similar to Exhibit 2, in the drawer of the linen chest; Exhibit 2 is not her husband's gun.

The alleged defense was that the revolver was not defendant's, he did not know it was in the suitcase, and that defendant's brother and Miss Smith conspired for the purpose of planning the arrest of defendant in order that they might get control of the business operated by defendant and Miss Smith, and that they might thwart defendant in his efforts to collect money which the brother owed to defendant. Counsel for defendant argued to the jury that defendant's brother planted the "rider" (an unknown person hereinafter referred to) in defendant's car, and planted the gun in the rider's suitcase.

Defendant testified that the several suitcases or bags which were in the courtroom were in his car when he last saw them; one of the bags (Exhibit A) did not belong to him; he first saw that bag in San Francisco in the possession of a man, whose name defendant did not know; the first time defendant saw the gun was when Officer Weil took the gun out of the suitcase; he had a telephone conversation with Miss Smith on February 17, before he was arrested, and she asked him to come to her apartment at 12 o'clock, and he agreed to go there at that time; he drove to her apartment, got out of his car, and walked toward the apartment; at that time five or six officers arrested him.

Appellant testified further that he was in San Francisco about four days preceding February 16; he went there to collect $1,625 that his brother Leonard owed him; he did not think that he slept at his brother's home during that time; he had no conversation with Mrs. Leonard Glancy concerning a gun; he could not say how much money Miss Smith owes him, but he would say she took $1,300 that belonged to him; on the morning of February 16 he and his brother had a violent quarrel about the money that his brother owed him, and as a result thereof defendant sought legal counsel regarding collection of the money; also on the morning of February 16 defendant was in his brother's bar talking to an employee of the bar by the name of Bob, and defendant said that he (defendant) was leaving in the afternoon to go to Los Angeles; a man, who was a stranger and was sitting next to them, asked defendant if he could go to Los Angeles with him; defendant said that Bob and the man could go with him;

they replied that they would go; defendant does not know the name of the man; defendant, after telling them he would pick them up about 4 o'clock, left the bar; a few minutes after 4 o'clock he drove his automobile to the front of the bar and asked his brother where Bob was; the brother said that he did not know where Bob was, but the other fellow had gone to the bus station; defendant went to the station, saw the man standing in line to get on a bus, and asked the man if he wanted to go with him to Los Angeles; then the man left the line, got a refund on his ticket, put his bag (Exhibit A) in the front part of defendant's car, and they (defendant and the man) headed for Los Angeles; the man was in the front seat next to defendant, who was driving; the suitcase was against the front seat and the man had his legs over the top of it; they stopped at Gilroy and had dinner; the man had been drinking wine on the way from San Francisco; after leaving Gilroy they went about 20 miles and stopped at the side of the road and slept; about 10 p. m. an officer knocked on the window of the car and awakened them; the man started mumbling, and defendant told him to be quiet or get out; the man got out and left the suitcase (Exhibit A) in the car; defendant did not notice where the man went; the officer went away; defendant drove to Los Angeles alone, arriving there about 9 a. m. on February 17; he never opened the suitcase (Exhibit A).

Defendant also testified regarding business transactions he had with Miss Smith. He said that they had arguments, but he denied that he struck or hurt her. He testified that he had been convicted of passing a weapon into a state penitentiary, a felony, and he had been convicted of three other felonies as alleged in the information.

▆▆▆▆ Appellant's argument, regarding insufficiency of the evidence, is that there was no proof that the suitcase belonged to defendant or that he knew that the gun was in the suitcase. As above stated, the wife of defendant's brother said that the gun (Exhibit 2) was similar to the gun which defendant removed, upon her demand, from the linen chest at her home.

▆▆▆▆ Of course, the jury was not required to believe defendant's story to the effect that a mysterious stranger left the suitcase in defendant's automobile. The part of the charge that defendant had been convicted of a felony was admitted by him. The evidence was sufficient to support the judgment.

▆▆▆▆ A further contention of appellant is that the evidence

was the product of an illegal search and seizure, in that, the officer did not have a search warrant or any warrant or reasonable cause to believe that a felony was being committed. Since the suitcase was introduced in evidence by defendant, it is to be assumed that appellant did not intend that his argument should apply to that part of the evidence. Appellant relies on the Cahan case (44 Cal.2d 434 [282 P.2d 905]), which was decided April 27, 1955. The trial of the present case was commenced May 17, 1955. Defendant did not object to the introduction of the revolver and cartridges in evidence. In *People* v. *Kitchens*, 46 Cal.2d 260 [294 P.2d 17], it was held that in cases tried before the Cahan decision the question as to whether the evidence was obtained lawfully would be reviewed on appeal even though an objection to the introduction of the evidence was not made at the trial. As above indicated, the present case was tried after the Cahan decision was rendered (but before it became final). In the present case it does not appear whether or not the officers had a warrant for the arrest of defendant or for the search of the automobile or suitcase. Officer Weil testified that he had information concerning the commission of a felony, when he arrested the defendant. He did not state the facts or information which he regarded as reasonable cause for believing that a felony was being committed or had been committed. In *People* v. *Boyles*, 45 Cal.2d 652 [290 P.2d 535], it was said at page 656: "Since the court and not the officer must make the determination whether the officer's belief is based upon reasonable cause, the officer must testify to the facts or information known to him on which his belief is based." In *Willson* v. *Superior Court*, 46 Cal.2d 291 [294 P.2d 36], it was said at page 294: "[E]vidence must be presented to the court that would justify the conclusion that reliance on the information was reasonable." In *People* v. *Boyles, supra*, it was said at page 656: "[R]easonable cause to justify an arrest may consist of information obtained from others and is not limited to evidence that would be admissible at the trial on the issue of guilt." In the present case, counsel for defendant, by objecting to the testimony of Miss Smith regarding her conversation with Leonard Glancy, prevented the prosecution from presenting evidence as to the information which she gave to the police. (She had just testified that pursuant "to talking to Leonard Glancy in San Francisco" she notified the police of Los Angeles.) When the deputy district attorney asked Miss Smith, on direct examination,

what the information was that she received in the telephone conversation with Leonard Glancy, counsel for defendant objected "to conversation outside the presence of this defendant." The objection was sustained. The deputy district attorney said "[T]his is being offered as an exception to the hearsay rule under the Cahan case." After some further discussion, the judge said to counsel for defendant: "Your objection is based on the ground that this is hearsay? Mr. Hall [counsel for defendant]: That is right. I will stand on my objection. The Court: The objection is sustained. Conversation outside the presence of the defendant is hearsay. Mr. Galliano [deputy district attorney]: Even in spite of the new ruling? The Court: I don't know of any such new ruling. Mr. Hall: Neither do I. Mr. Galliano: Very well." Thereafter the deputy asked Miss Smith if she told the police department what she had heard from San Francisco. She answered, "Yes." Counsel for defendant objected on the ground that it was hearsay. The judge said that it was repetitious, and "She may not state what she told the police." Apparently it was the intention of the deputy district attorney, in asking those questions, to establish a part of the basis for the officer's belief that there was reasonable cause for the arrest and search; and also to present evidence as to the source of the information and the identity of the police informant, which would be material to the question whether "reliance [by the police] on the information was reasonable." In view of those objections and rulings (rulings that conversation outside the presence of the defendant is hearsay, and that she would not be permitted to state what she told the police), it is apparent that testimony by a police officer as to what she told him would also have been excluded. Officer Weil had not talked to Miss Smith—he said that Captain Jones and Lieutenant Economides had ordered him to go to "this stake-out." There were other officers in attendance at the trial, as witnesses, but they were not called to testify. (They were Officers Jackson and Hubka.) It is reasonable to conclude that defendant, by his objections, prevented the prosecution from presenting evidence as to the information received by the police department. In *People* v. *Boyles, supra,* it was said at page 656 (after holding, as above stated, that the officer must testify to the facts on which his belief is based): "Under the peculiar circumstances of this case, however, defendant is not in a position to challenge the failure of the record to establish the basis for the officer's

belief. When the prosecuting attorney sought to establish that basis, defendant objected and the committing magistrate ruled that the matter should be gone into on cross-examination. At that time defendant limited the examination to a determination that the officer had not personally witnessed any activity of defendant with regard to narcotics. . . . Thus in the present case it is entirely possible that the officer's belief that defendant had narcotics in her possession was fully justified by reliable information obtained by him from others in carrying out his duties. Since defendant successfully prevented the prosecution from presenting such evidence, if any, she cannot now contend that the evidence before the committing magistrate was necessarily illegally obtained and therefore insufficient to support the information." In *Badillo* v. *Superior Court,* 46 Cal.2d 269 [294 P.2d 23], it was said at page 272: "[T]he defendant makes a prima facie case when he establishes that an arrest was made without a warrant or that private premises were entered or a search made without a search warrant, and the burden then rests on the prosecution to show proper justification." As above indicated, it does not appear herein that the officers did not have a warrant for arrest or a search warrant. In *People* v. *Citrino,* 46 Cal.2d 284 [294 P.2d 32], it was said at page 287: "The record, however, is silent as to whether the officers had a search warrant, and in the absence of any evidence showing the illegality of the search, we must presume that the officers regularly and lawfully performed their duties." In view of the record in the present case, it could be presumed that the officers, in arresting defendant and making the search, lawfully performed their duties. Furthermore, under all the evidence herein, it could reasonably be inferred that the officers had reasonable cause for believing that a felony was being committed. Officer Weil testified that he had information concerning the commission of a felony, when he arrested defendant. Miss Smith had taken the telegram, which she received from Leonard Glancy, to the police. Also, after she had telephoned Leonard, as requested in the telegram, and had been told by telephone that defendant was on his way to her apartment with a loaded revolver to get her, she notified the police. The fact that, on the day after she received the telephonic information, five police officers were stationed near her apartment for several hours awaiting the arrival of defendant indicates that the information upon which the officers were acting was, at least in part, the information she had

received by telephone. (In *People* v. *Farrara*, 46 Cal.2d 265 [294 P.2d 21], it was said at page 268: "From the fact, however, that the officers had defendants and the apartment under observation, it may be inferred that they had some information indicating guilt . . . .") After the telegram had been received by Miss Smith, defendant arrived at her apartment, when the officers were present, approximately within the time that is ordinarily required to travel from San Francisco to Los Angeles. The officers were justified in making the arrest. The arrest being lawful, the search of the automobile and suitcase was an incident to the arrest and was not illegal. In *People* v. *Winston*, 46 Cal.2d 151 [293 P.2d 40], it was said at page 162: " 'It is well settled that a search without a warrant is valid where it is incident to a lawful arrest, if it is reasonable and made in good faith; and that a seizure, during such a search, of evidence related to the crime is permissible.' " It was also said therein at page 162: " 'The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime, and to search the place where the arrest is made in order to find and seize things connected with the crime . . . is not to be doubted.' " The revolver and cartridges were admissible in evidence.

Appellant also contends that rulings as to admissibility of evidence were erroneous. Counsel for appellant states that "An examination of the record shows innumerable objections by the District Attorney, all of which were sustained by the court." That statement is not correct. Approximately 65 of the objections by the deputy district attorney were overruled. Approximately 135 of his objections were sustained.

Appellant asserts that the court erred in sustaining an objection to his question, on cross-examination, whether Miss Smith shared the same premises with defendant in San Ysidro. His argument at the trial seemed to be that it was a material question because she had testified that he had threatened her and she was in fear. She had testified that she had known him 10 years and she had been in San Ysidro with him at different times. The question did not specify whether reference was made to a time before or after the threats. Later she testified that she was in San Ysidro with him when he threatened to shoot her. The ruling was not erroneous.

Appellant asked Miss Smith if she had filed a complaint with the city attorney's office. An objection thereto

was sustained. Appellant asserts that the question was for the purpose of showing bias on the part of the witness. The ruling was not prejudicial—she testified later (as above stated) that she made a complaint (for battery) against defendant at the city attorney's office.

Three other questions, which appellant asked Miss Smith for the purpose of showing bias on her part, were: whether she received any compensation for working for defendant; whether she had any disagreement with him as a result of working for him; and when she first had any difficulty with him. Objections to those questions were sustained. She had testified that she was on salary for three weeks. Later she testified that they had arguments about partnership and money matters, and that he first threatened her, over the telephone, in December, 1954. The rulings were not prejudicial.

■ Another question asked Miss Smith, for such purpose, was: "Why did the defendant threaten you?" Of course, the objection was properly sustained—the question called for a conclusion.

■ Appellant quotes 10 pages of the reporter's transcript and then comments that, "Repeated questions were objected to as not proper cross-examination or objected to as immaterial and objections were sustained. In each of these rulings, which we have quoted in part, the court unduly limited the scope of cross-examination." Counsel for appellant did not point out and discuss any particular ruling in that long quotation. It would unduly extend this opinion if this court were to assume the burden of singling out and discussing the rulings therein which sustained objections to appellant's questions. The first question therein was: "Is it possible, Miss Smith, that there could have been other meetings?" Of course, it was proper to sustain the objection thereto on the ground that the question called for speculation. Other questions were: whether defendant was arrested in her apartment on January 28; whether she knew when "a man is arrested"; how many times she had called the police; whether defendant was in jail in January; how long was defendant in her apartment when he came for breakfast; whether they argued about a check when he was there for breakfast; whether the date when defendant was arrested was clear in her mind; whether defendant had her telephone number; whether she asked him to come over to her apartment; what time she talked (by telephone) to defendant on the day of his arrest. Some of those questions had been

answered, and some of them were immaterial. There was no prejudicial error in any of the rulings included in that quotation from the transcript.

A further contention of appellant is that he was unduly limited in cross-examination of the prosecution witnesses. His points and argument with respect to this contention are substantially the same as those with respect to alleged erroneous rulings as to admissibility of evidence. This contention is not sustainable.

■ Another contention of appellant is that the court erred when it told defense counsel, in the presence of the jury, as follows: "Mr. Hall, I am going to hold you in contempt of court if you go through any more gyrations like this." Counsel for appellant states in his brief: "At no time did the court instruct the jury to disregard them, and in his concluding instructions, he did not tell the jury to disregard any comments of either court or counsel." That statement of counsel for appellant is not correct. Immediately after said remark of the judge, the judge said to counsel for defendant: "You are admonished that you are to examine the witness on matters relevant, and relevant only." The judge then said: "Ladies and gentlemen of the jury, you are to disregard, insofar as your determination of this case is concerned, the remarks of counsel and the discussion of this Court with counsel." Counsel for defendant brought on the remark of the court about contempt by asking Mrs. Glancy, wife of defendant's brother, many questions that were irrelevant or not proper cross-examination. Just before the judge made said remark about contempt, Mrs. Glancy had stated her residence address. Then counsel for defendant said: "And you also have a business address of 2410 Mission Street, have you not?" The deputy district attorney objected on the ground that it was immaterial. The court overruled the objection. Mrs. Glancy answered, "Not any more." "Q. By Mr. Hall [counsel for defendant]: Well, you did recently? A. Yes. Q. Up until recently. Well, until your license was taken away? Mr. Galliano [deputy district attorney]: Now, just a moment. Your Honor please——." (The license, so referred to, pertained to the bar operated by defendant's brother.) In view of all the circumstances which preceded the remark of the judge regarding contempt, and in view of the admonition immediately given to the jury after the remark, it cannot be said that there was prejudicial error.

■ Appellant also contends that he was prejudiced by

the failure of the prosecution to produce defendant's brother as a witness. He argues to the effect that on May 3 the trial of the case was continued to May 17, at the request of the prosecution, in order that the prosecution might produce the brother as a witness. The brother was not present at the trial. Prior to the continuance the defendant had obtained a subpoena for the brother, had sent it to the sheriff at San Francisco for service, and the sheriff had made a return that he was unable to locate the witness. At the trial, and in the presence of the jury, counsel for defendant stated that the subpoena had been issued, that he had sent it to the sheriff, and that said return had been made. When that statement was made the judge told counsel for defendant to file the return of service to show that the subpoena had not been served. The minutes of the court of May 3 show that the case was continued "On motion of People and due to congested condition of court's calendar." When the case was called for trial on May 17 defendant did not ask for a continuance, but answered that he was ready for trial. When it appeared during the trial that the brother was not present, the defendant did not ask for a continuance. Defendant called a deputy district attorney (Mr. Whichello) as a witness and asked him if he was familiar with the file in the case. An objection thereto was sustained. Counsel for defendant said that his question pertained to the efforts the witness had made to secure the attendance of the brother, and that the case was continued on the representation of the district attorney's office "that efforts were being made to procure the presence of——." The judge then said that counsel for defendant had already made those statements. The district attorney was not required to secure the attendance of the brother.

 While Mrs. Glancy, the wife of defendant's brother, was a witness, defendant's counsel asked her when she last talked to her husband. She replied that she saw him just before she left (San Francisco) to come to Los Angeles as a witness. She was also asked, "[W]here is your husband now?" An objection thereto was sustained. Defendant argues that he had a right to show that he tried to obtain the brother as a witness, and to show whether the brother was evading service of the subpoena. The objection should not have been sustained, but the ruling was not prejudicial. Defendant had already shown that he tried to serve a subpoena on the brother and that the sheriff could not find him. Fur-

thermore, defendant did not indicate that, in view of the testimony of Mrs. Glancy, he desired a continuance in order to make further efforts to serve the subpoena.

The judgment, and the order denying the motion for a new trial, are affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 24, 1956.