[Crim. No. 8330. Second Dist., Div. Two. Dec. 18, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM GAYLAN GILMORE, Defendant and Appellant.

No appearance for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

FOX, P. J.—Defendant was convicted of the fraudulent possession of blank or unfinished checks in violation of section 475, Penal Code.[1] He has appealed.

Defendant was represented in the trial court by the Public Defender. Defendant filed his notice of appeal in propria persona. He later filed application for appointment of counsel to represent him on appeal. We then examined the record and determined that appointment of counsel "would be neither advantageous to the defendant nor helpful to this court", and therefore denied the application, notified the defendant thereof and extended his time to August 27, 1962, within which to file his opening brief. No brief has been filed.

---

[1]Defendant admitted a prior felony conviction for which he served time in the state prison.

 Viewing the evidence, as we must on appeal, in the light most favorable to the successful party in the trial court (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]), it appears that:(1) the evidence is amply sufficient to sustain defendant's conviction; (2) none of his legal rights was improperly invaded; and (3) he had a fair trial.

The record discloses that on the night of October 10, 1961, the office of Pioneer Boring Company, Inc. of Santa Fe Springs was broken into and two groups of blank or incompleted checks were stolen. One batch (yellow) was payroll checks; the other (buff) was for commercial use.[2]

Approximately the middle of October defendant sold an old typewriter for $10 to Howard D. Cook who was in the auto wrecking business. They had known each other for some 15 years and had had various business transactions with each other during that period. A couple of days later defendant brought to Cook's home a check protector and two batches of checks—one yellowish in color, the other buff—with Pioneer Boring Company printed on them. Cook asked defendant "where the checks had come from." Defendant did not "answer one way or the other." He replied "just drunk." Cook had the checks for approximately a week. Defendant asked him if he knew where he (defendant) could get rid of them. Cook told him that Johnny Morase "had just got out, and he probably would know something." Later Cook went to a beer tavern where he met defendant and Johnny. He had the checks in his car. Johnny asked Cook if he had them. Cook said yes. While Cook was talking with defendant, Johnny got the checks out of Cook's car.

A few days later defendant made a purchase at Baker Motor Parts in Whittier, attempting to use one of the Pioneer Boring Company checks in the transaction. One of the employees got the license number of the car defendant was driving, and was also able to provide the sheriff's office with a description of defendant.

On October 27th Officer Boley of the Whittier Detective Bureau received information from Sergeant Penny of the Norwalk Sheriff's office relative to an attempt to pass one of the stolen Pioneer Boring Company checks at a South Whittier business establishment the previous day. Sergeant Penny provided Officer Boley with a description of the person who attempted to pass the check and the license number of

---

[2]A typewriter, check protector and some other items were also stolen.

the car he was driving. The car in question was located in a parking lot of a café. The officer observed that the license plate on the rear of the car bore a number different from that on the front plate. Defendant, the sole occupant of the car, was on the driver's side, "attempting to leave the location." Officer Boley placed defendant under arrest, and proceeded to search the car. In the trunk the officers found another set of license plates. Search of the interior brought to light a paper bag "located under the right hand side under the front seat" that contained two batches of checks—one yellow and the other buff—of the Pioneer Boring Company. By that time "they had been run through the check protector in various amounts." Further search revealed two other groups of Pioneer Boring Company checks—one of four and the other three. They found one group in the front pocket of a man's sport shirt on the back seat of the vehicle. Without taking the checks out of the pocket, the officer showed it to defendant and asked him: "Is that your shirt?" He replied, "It kind of looks like it."

Defendant did not take the stand and did not offer any evidence.

Although defendant did not file any brief, he did set forth in his notice of appeal the various theories and facts upon which he relied in seeking a reversal. We shall therefore notice these briefly.

His initial point is "illegal search and seizure." ▮ In *People* v. *Ingle,* 53 Cal.2d 407 [2 Cal.Rptr. 14, 348 P.2d 577], at pp. 412-513, the court stated: "Reasonable or probable cause for an arrest has been the subject of much judicial scrutiny and decision. There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances [citations]—and on the total atmosphere of the case. [Citations.] ▮ Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. [Citations.] ▮ Probable cause has also been defined as having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt. [Citations.] It is not limited to evidence that would be admissible at the trial on the issue of guilt. [Citation.] The test is not whether the evidence upon which the officer acts in making the arrest is sufficient to convict but only whether the person should stand trial. [Citation.]"

 Applying these principles, it is apparent that the license number of the car and a description of the person who had attempted to pass one of the stolen checks which was furnished by the Sheriff's Norwalk office, plus the observation that the car defendant was in had different license plates on the front and rear, provided probable or reasonable cause for Officer Boley to arrest defendant. As an incident to defendant's arrest the officers were obviously entitled to search the car.

Defendant asserts that he was denied the right to discharge the public defender and to defend himself. The record fails to disclose any suggestion that would support either of these contentions. Defendant also complains that he was denied the right to a jury trial. The record affirmatively shows that he stated three times that he desired the judge to decide the case without a jury. His counsel and the prosecutor joined in the waiver. There is, of course, no merit to his complaint that he was denied the right to address the court. He had a lawyer who spoke for him.

 Defendant makes the point that the vehicle in which the checks were found was borrowed and that he was not responsible for its contents. In this connection it is significant that defendant did not take the witness stand and did not offer any other evidence. This was a matter peculiarly within his own knowledge. In such a situation the observation of this court in *People* v. *Smith,* 113 Cal.App.2d 416 [248 P.2d 444], at p. 419, is apposite: ''. . . the defendant failed to avail himself of an opportunity to explain or deny a number of incriminating circumstances about which he could reasonably be expected to know. The court was entitled to consider his failure to do this 'as tending to indicate the truth of such evidence and as indicating that among the inferences that may be drawn therefrom, those unfavorable to the defendant are the more probable.' (*People* v. *Adamson,* 27 Cal.2d 478 [165 P.2d 3].) ''

Defendant's contention that there was no conclusive evidence to connect him in any way with the possession of the checks completely overlooks the testimony of his long-time friend Cook; the fact that he attempted to pass one of these checks, and the various checks that were found in the car he was in when arrested.

There is no support whatever in the record for the other points on which defendant relies. Examination of the record

discloses that he had a fair trial and that there is no justification whatever for a reversal.

Affirmed.

Ashburn, J., and Herndon, J., concurred.