[Civ. No. 24476.   First Dist., Div. Four.   Sept. 18, 1967.]

LAWRENCE EUGENE NUGENT et al., Petitioners, v. THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

Theodore A. Cohen for Petitioners.

No appearance for Respondent.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Timothy A. Reardon, Deputy Attorneys General, for Real Party in Interest.

CHRISTIAN, J.—An information is pending against the three petitioners charging them with the burglary of a residence in Atherton. After the trial court denied their motion to set aside the information under Penal Code section 995, petitioners sought a writ of prohibition under Penal Code section 999a, asserting that the magistrate's order committing them for trial was made without probable cause. A summary of the evidence received at the preliminary hearing follows.

When the complaining witness, Mrs. Freeman, arose on the morning of October 5, 1966, she observed that her jewel box was missing from the bedroom. Officer Hollings of the Atherton Police Department came to investigate in response to her call. The jewel box was found on the floor in the dining room;

several pieces of jewelry were missing. Officer Hollings and Mrs. Freeman then saw that three flower pots which normally rested on a kitchen windowsill were on the drain board and that the window was unlocked. It was also discovered that a large sliding glass door leading from the dining room to the outdoors was ajar. No further evidence was developed at the scene.

On the morning of October 20, 1966, Sergeant Wells of the Los Angeles Police Department, who normally worked on forgery cases out of the Van Nuys police station, received a telephone call from Officer Morning of the Beverly Hills Police Department. Morning told Wells that three men— Nugent, King and Comstock—had been occupying a room in the Sportsman's Lodge, a hotel on Ventura Boulevard in Los Angeles, and that upon checking out Nugent had issued a $240 worthless check for the room charges. Morning related that on the previous day these men had been observed for three and one-half hours in the vicinity of the Saks Fifth Avenue store in Beverly Hills. Morning believed the men to be involved in burglaries and robberies, and that their activity at the store "indicated that they were looking for someone or planning or casing a place for a possible robbery." Morning later informed Wells that he had taken the three men to the police station in Beverly Hills the night before and obtained their names and checked their identifications.

Sergeant Wells and Sergeant Sheldon, also of the Los Angeles Police Department, went to the Sportsman's Lodge where they met Officers Morning and Carden of the Beverly Hills Police Department and talked to the hotel manager. The manager showed the officers the $240 check, stated that he had learned through a telephone call to the drawee bank that the check was issued against insufficient funds, and related that he had prevented the three petitioners from taking their car out of the hotel parking lot. Petitioners had then removed a suitcase from the car, given the car keys to the manager, and walked to a coffee shop about half a block from the hotel.

Officer Carden had been watching the coffee shop from a car parked across the street. Officer Morning informed Sergeants Wells and Sheldon that the three suspects were still in the coffee shop. As the officers proceeded toward the coffee shop, three men came out; Officer Morning identified them as the suspects. Two of the suspects remained in front of the building while the third, later identified as petitioner King, walked

west on Ventura Boulevard in the direction away from the Sportsman's Lodge. He was carrying a suitcase.

The four officers conferred briefly. Then Sergeant Sheldon and Officer Morning overtook the two suspects, who were by then walking west on Ventura Boulevard, and placed them under arrest "for checks." Meanwhile, King had walked into the driveway of the Green Valley Motel just west of the restaurant. He soon reappeared on the sidewalk without the suitcase. Officer Wells then apprehended King for determination of his identity and investigation of "his participation in the issuing of the check at the Sportsman's Lodge Hotel." Wells did not inform King that he was under arrest, or declare the cause of any arrest, as required by Penal Code, section 841. After learning King's identity, Wells continued to hold him in custody and, entering the office of the Green Valley Motel, obtained the suitcase from the manager. Sergeant Sheldon and Officer Morning arrived with Nugent and Comstock in custody. Officer Wells wanted to search the suitcase. When the suspects did not respond to his request for a key (the suitcase was secured by means of a combination lock), Sheldon asked for a knife to open it with. Comstock then said, "Don't damage it. I will open it." The bag was opened and searched and was found to contain a revolver, burglar's tools, a book of checks imprinted with the name "Lawrence E. Nugent" and several pieces of jewelry, some of which proved to have been taken from the Freeman residence in Atherton two weeks earlier. Upon that evidence, petitioners were held to answer.

Petitioners made a timely motion to set aside the information under Penal Code section 995. It is therefore our function on this petition to determine whether the evidence received at the preliminary hearing afforded probable cause to hold the petitioners for trial. ██ "Probable cause is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused." (*Jackson* v. *Superior Court* (1965) 62 Cal.2d 521, 525 [42 Cal.Rptr. 838, 399 P.2d 374]; *Perry* v. *Superior Court* (1962) 57 Cal.2d 276. 283 [19 Cal.Rptr. 1, 368 P.2d 529].)

██ There is evidence that a burglary did occur in Atherton on October 5, 1966. Passing for the moment the question of admissibility of the contents of the suitcase, each of the petitioners was involved in his own way with the suitcase: a checkbook used by Nugent was in the suitcase; King carried

the suitcase into the office of the nearby motel in an apparent attempt to conceal it; and Comstock opened the suitcase by working the combination when the officers insisted on seeing the contents. These facts, taken with the petitioners' joint occupation of the hotel room, reasonably support an inference of joint possession of the loot and the burglar tools. ▮ While mere possession of recently stolen goods standing alone will not sustain a conviction of burglary, it is a circumstance tending to indicate guilt and if corroborated by other circumstances such as guilty conduct, false explanations of possession, or admissions, will sustain a conviction. (*People* v. *McFarland* (1962) 58 Cal.2d 748, 755 [26 Cal.Rptr. 473, 376 P.2d 449]; *People* v. *Byrd* (1964) 228 Cal.App.2d 646, 650 [39 Cal.Rptr. 644].) ▮ Possession of burglar's tools reasonably tends to corroborate that inference of guilt. (*People* v. *Wilkes* (1955) 44 Cal.2d 679, 683 [284 P.2d 481]; *People* v. *Wilson* (1965) 238 Cal.App.2d 447, 463 [48 Cal.Rptr. 55].) This is so even if it is not shown that the tools were used in the particular burglary if, as in this case, they are of the kind that *could* have been used in the burglary. (*People* v. *Gregor* (1956) 141 Cal.App.2d 711, 716-717 [297 P.2d 734].) ▮ Also, incriminating inferences can be drawn from the fact that after the three suspects left the coffee shop, when they must have expected police interrogation, King tried to hide the suitcase. The evidence, if admissible, is sufficient.

We must next determine the admissibility of the evidence derived from the search of the suitcase; if that evidence is excluded from consideration, there is nothing to connect petitioners with the Atherton burglary.

The officers did not have a search warrant when Comstock was induced to open the suitcase under threat that it would be cut open if necessary. Therefore the evidence is inadmissible unless the search was incident to a valid arrest. (*Mapp* v. *Ohio* (1961) 367 U.S. 643, 655 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933]; *People* v. *Cockrell* (1965) 63 Cal.2d 659, 665 [47 Cal.Rptr. 788, 408 P.2d 116].) A peace officer may, without a warrant, arrest a person "Whenever he has reasonable cause to believe that the person to be arrested has committed a felony, . . ." (Pen. Code, § 836, subd. 3.)

▮ "Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. [Citations.] Probable cause has also been defined as having

more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt. [Citations.] It is not limited to evidence that would be admissible at the trial on the issue of guilt. [Citations.] The test is not whether the evidence upon which the officer acts in making the arrest is sufficient to convict but only whether the person should stand trial.'' (*People* v. *Ingle* (1960) 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14. 348 P.2d 577] ; see also *People* v. *Hillery* (1967) 65 Cal.2d 795, 803 [56 Cal.Rptr. 280. 423 P.2d 208] ; *People* v. *Schader* (1965) 62 Cal.2d 716, 722 [44 Cal. Rptr. 193, 401 P.2d 665] ; *People* v. *Fischer* (1957) 49 Cal.2d 442, 446 [317 P.2d 967].)

■ Here the arresting officers were told by the hotel manager that one of the petitioners had given his assistant a check for $240 in payment for a room occupied by all three men. He also told the officers that he had called the drawee bank and had been told that there were not sufficient funds in Nugent's account to cover the check. The officers saw the check, and saw that it was signed ''Lawrence Nugent.'' The officers could reasonably rely on this information. supplied by an ordinary citizen who observed criminal activity, in believing that Nugent was guilty of a violation of Penal Code section 476a (issuance of check without sufficient funds with intent to defraud). (*People* v. *Lewis* (1966) 240 Cal.App.2d 546, 550 [49 Cal.Rptr. 579].) They were therefore authorized to arrest Nugent without a warrant.

■ A different problem is presented by the arrests of Comstock and King. They did not sign the check and there was no evidence of their knowledge that the account held insufficient funds. On this point respondent argues: ''Having shared in the proceeds of the suspected crime. having departed together from the scene of the suspected crime, and having been designated by Officer Morning as possible burglary suspects, it was reasonable for Officers Wells and Sheldon to believe that Comstock and King had at least advised and encouraged Nugent's act, which would make them accessories to the crime of violating Penal Code section 476a and give the officers probable cause to place them under arrest along with Nugent.'' We do not agree. The information then available to the police had no tendency to show the existence of a common design to defraud the hotel proprietor by means of the worthless check. and mere association with a person who issues a check against insufficient funds is not sufficient

to establish criminal responsibility. (*People* v. *Simon* (1955) 45 Cal.2d 645, 649 [290 P.2d 531].)

Having concluded that the arrest of Nugent was valid and that the arrests of King and Comstock were not, we must finally consider whether the search of the suitcase can be justified as incidental to the valid arrest of Nugent. ■ "[A] search is not 'incidental to an arrest' unless it is limited to the premises where the arrest is made; is contemporaneous therewith; has a definite object; and is reasonable in scope." (*People* v. *Cruz* (1964) 61 Cal.2d 861, 866 [40 Cal.Rptr. 844, 395 P.2d 889]; *People* v. *Mickelson* (1963) 59 Cal.2d 448, 452-454 [30 Cal.Rptr. 18, 380 P..2d 558].) A search of Nugent's effects for evidence of the crime for which he had been arrested, or for weapons under his control, would be proper. (Pen. Code, § 833; *People* v. *Robinson* (1965) 62 Cal.2d 889, 894-895 [44 Cal.Rptr. 762, 402 P.2d 834].) ■ But here the suitcase was not in Nugent's possession when he was arrested and there is no evidence that either the officers or the informant saw the suitcase in Nugent's possession before the arrest. Also there is no evidence that the car from which the suitcase was taken belonged to Nugent. The burden rests upon the prosecution to show that the search was incidental to an arrest. (*People* v. *Shelton* (1964) 60 Cal.2d 740, 744 [36 Cal. Rptr. 433, 388 P.2d 665].) That responsibility has not been met in this case; the search was not limited to the premises where the arrest was made and, so far as we can determine, had no definite object related to the offense for which the arrest was made. On this record we are compelled to hold that the search was unlawful and that, clear and timely objection having been made, the evidence should have been excluded.

A writ of prohibition will issue as prayed.

Devine, P. J., and Rattigan, J., concurred.