[Crim. No. 13343.    Second Dist., Div. Four.    July 22, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. DONALD KELLEY, Defendant and Appellant.

William F. Brainard, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Robert M. Snader, Deputy Attorney General, for Plaintiff and Respondent.

FILES, P. J.—Defendant was charged by information with the offense of possession of marijuana in violation of Health and Safety Code section 11530. Defendant personally and his

attorney stipulated with the district attorney to submit the case to the trial court on the transcript of the preliminary examination. The court found defendant guilty as charged, and he is appealing from the judgment. The notice of appeal also refers to the order denying a new trial, which is not separately appealable. (Pen. Code, § 1237.)

When defendant was searched in the course of the customary booking process at the Ventura police station following his arrest for an unrelated offense, marijuana was found in a sandwich bag which was carried inside defendant's trousers. The bag and its contents were inspected by the trial judge, who announced that the quantity was sufficient to be smoked. There is nothing in the record here to cast doubt upon the correctness of that finding.

Defendant contends on appeal that the discovery of the contraband was the result of an illegal arrest and therefore it should not have been received in evidence against him. There was no objection to any of the evidence, and no motion to strike any of it. Ordinarily, absent such an objection or motion, the issue cannot be raised in the appellate court. (*People* v. *Flores,* 68 Cal.2d 563, 567 [68 Cal.Rptr. 161, 440 P.2d 233].)

In the case at bench, after counsel for both sides had argued, the trial judge orally analyzed the evidence and expressed his reasons for concluding that the arrest was not unlawful. Apparently the trial court had permitted counsel to raise that issue for the first time in their arguments, which were not reported. Inasmuch as the trial court did consider and rule upon the issue, this court will also consider it.

At about 11:30 p.m. on July 2, 1966, Officer Hill, on patrol, received a radio message to the effect that there had been a possible theft from a gasoline station and that the car involved, a maroon 1956 Chevrolet, almost ran over the attendant when leaving the station. A few moments later Hill saw the Chevrolet, traveling about 40 miles per hour. The license number corresponded with that in the report from the station. Officer Hill pursued in his patrol car, using his red light. The Chevrolet increased speed to 60 miles per hour, but eventually stopped. The driver, Tevebaugh, stepped out of the Chevrolet, ran back to the police car and volunteered " 'Let the other people go. They didn't do anything wrong.' " Officer Hill explained to the driver there had been a report that he had left a gasoline station without paying, and suggested that the driver come to the police headquarters to talk to the gasoline station attendant.

Officer Hill then approached the Chevrolet, in which the defendant was seated, as well as another male named Young, and a female, Mrs. Zumwalt. Officer Hill made the same explanation and request to them. They agreed to accompany him. Tevebaugh drove the Chevrolet to the police headquarters while the other three rode in the police vehicle.

Upon their arrival at police headquarters Officer Lydick asked all four for identification. Mrs. Zumwalt had an operator's license, one man had a Job Corps card with no physical description on it, one had a traffic citation from the Highway Patrol and another had a citation from either the Burbank or Glendale Police Department. No other identification was tendered.

Officer Lydick asked who owned the car and Tevebaugh said that he did. Officer Lydick asked for a registration or anything else to show ownership, and Tevebaugh said he had none.

At this point Officer Lydick explained to all three males that they were suspects in a crime and then advised them in some detail of their rights to counsel and to silence. Each acknowledged that he understood.

Outside the presence of Mrs. Zumwalt, the officer asked Tevebaugh from whom he had acquired the car. Tevebaugh said he bought it last December from a man in Burbank or Glendale whose name he didn't know.

Mrs. Zumwalt, who was warned and questioned separately, said Tevebaugh was her brother, that he had bought the car from her, but she did not know anything about the registration or from whom she had bought it.

A check with the Highway Patrol disclosed that the license plates on the car had been issued to a different vehicle, a 1952 Chevrolet registered to a person residing in Reseda. Officer Lydick then asked the men where the license plates had come from and they said they didn't know. The officer asked them for further information about where the vehicle had come from and where the registration was, but received no answers.

Officer Lydick asked Mrs. Zumwalt ''about the driving away from the station without paying for the $40 bill, and she stated in essence that they were broke; that their car broke down on them . . . and she used the term 'we' figured that it was the only way to get out of there, by driving away without paying for the bill since they didn't have any money to pay for it, and that she didn't have any place to stay and didn't have the money to pay for the bill. So she said they

got back in the vehicle and drove off." She mentioned that they were coming from someplace up north, but she didn't say where.

When the officer asked the men about driving out of the gasoline station without paying, they "shuffled their feet and shrugged their shoulders and looked at each other and grinned."

Following this, Officer Lydick informed the group they were being held for suspicion of automobile theft and conspiracy to commit petty theft.

■ The radio report justified the action of Officer Hill in stopping the Chevrolet and questioning the occupants. The apparent attempt of the driver to speed away, and his volunteered first statement to the police officer, tended to reinforce the inference that someone had done something unlawful. It was not improper to ask the four persons to come to police headquarters for an interview and to confront the aggrieved gasoline station attendant. The testimony of the officer does not indicate any arrest at this time. (See *People* v. *Mickelson*, 59 Cal.2d 448, 454 [30 Cal.Rptr. 18, 380 P.2d 658].)

■ The questioning at the station, which was at first purely investigatory, developed the strong suspicion that these people might be in possession of a stolen car—a suspicion which was enhanced by the fact that the car carried license plates issued to another vehicle.

The statements of Mrs. Zumwalt indicated that the four were on a trip of some duration, engaging in a joint enterprise, and that their flight from the gasoline station was a result of a common plan to defraud the proprietor. At this point the police had probable cause to arrest all of them as accomplices in the unauthorized operation of a motor vehicle, a felony. (Veh. Code, § 10851.) The officers had before them a combination of highly incriminating data, reflecting against all four of the individuals, and no information pointing to innocence, and no way of ascertaining immediately and reliably the guilt or innocence of any of them.

The decision to make the arrest was followed reasonably and properly with the booking procedure, and the search of the defendant's person which was essential to prevent the introduction of narcotics into the jail.

The attempted appeal from the order denying a new trial is dismissed. The judgment is affirmed.

Jefferson, J., and Collins, J. pro tem.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.