[Crim. No. 4605. Fourth Dist., Div. One. Oct. 21, 1971.]

THE PEOPLE, Plaintiff and Appellant, v.
GARY PHILLIP VERMOUTH et al., Defendants and Respondents.

## COUNSEL

Edwin L. Miller, Jr., District Attorney, Terry J. Knoepp and James D. Pippin, Deputy District Attorneys, for Plaintiff and Appellant.

Barry Tarlow for Defendants and Respondents.

## OPINION

**WHELAN, J.**—The People appeal from an order granting the motion of defendant Gary Phillip Vermouth to suppress, under Penal Code section 1538.5, certain evidence, and from an order dismissing all counts as to defendant David Alfred Neuhoff.

Defendants were charged jointly with possession of marijuana (Health & Saf. Code, § 11530), possession of marijuana for sale (Health & Saf. Code, § 11530.5), possession of a billy (Pen. Code, § 12020), and possession of paraphernalia for injecting restricted dangerous drugs (Health & Saf. Code, § 11915).

The trial court suppressed certain items of contraband found in the trunk of a vehicle, and in suitcases within the vehicle. Counts One, Two

and Four of the information were dismissed against both Vermouth and Neuhoff by the court pursuant to Penal Code section 1385. The trial court further granted a motion under Penal Code section 995 in favor of defendant Neuhoff on count Three of the information, leaving only count Three (possession of a billy) pending against defendant Vermouth.

The motions were heard on the transcript of evidence taken at the preliminary hearing.

On August 4, 1970, at 3:30 a.m., Harry Arne Lee, Jr., a San Diego policeman traveling alone in a police car westerly on University Avenue, saw ahead of him, going in the same direction, a car the rear lighting of which was defective and in violation of the Vehicle Code.

Lee overtook and stopped the car, which had California license plates; asked the driver, Vermouth, for his license, which was an out-of-state one, asked for the car's registration, which Vermouth said he could not find; asked who was the owner, and was told a friend of the driver; asked the other occupant of the car, Neuhoff, for identification and was shown an out-of-state driver's license.

By that time a second policeman, Vernon Raymond Christopher, had come along and was asked by Lee to have a check-up made as to Vermouth and Neuhoff and was given their driver's licenses. Lee suspected the car might be a stolen one.

Lee asked the two men to step out of the car and they were given a weapons patdown.

Vermouth was questioned again about the car's registration and told Christopher to look for it in the glove compartment.

Christopher looked into the car through the open door on the passenger side and leaned in, brushing against the open blade of a 5-inch pocket knife sticking outward from the space between the instrument board and a tape-playing machine. There was no closed glove compartment but a doorless opening which did not contain the registration.

Christopher handed the knife to Lee and then, looking across toward the driver's side, saw a billy resting against the door on that side in front of the seat. He took the billy, showed it to Lee and told the two defendants it was unlawful to have a billy club; Lee told them it was a felony. Vermouth said the knife and billy were his; that it was not against the law in the state where he lived to have a billy and he did not know it was against the law in California.

Christopher next asked Vermouth if he could search the vehicle, was

told he could, and entered the rear of the vehicle where he saw and took possession of a pair of wire strippers, which he handed to Lee; removed a black tarpaulin from what it covered on the back seat; removed a chain from the seat; moved a suitcase from the floor on the right side and placed it on another suitcase on the seat at the right side; took possession of a small paring knife from the floor where the suitcase had been; and got out of the vehicle.

Lee asked Vermouth if he had anything in the trunk he did not want the officers to see, was told he did not; asked for permission to look in the trunk, was told he might look, and was handed the keys by Vermouth.

Christopher opened the trunk which contained an electronic unit or part of a stereo, a small speaker, and a tool which at one end had a tire lug wrench and at the other a prying edge. The prying section had fresh, long scrape marks on it.

Thereupon Vermouth and Neuhoff were placed under arrest for burglary and possession of a billy club.

By reading from a card, Christopher advised Vermouth and Neuhoff of their Fifth and Sixth Amendment rights against self-incrimination and to the presence of counsel.

Vermouth was placed in one police car, Neuhoff in the other, after their clothing was searched. Vermouth had on his person $1,024, Neuhoff $324.

Lee next looked under the driver's seat and found there a switch-blade knife; looked further for the registration certificate and found it attached to the upper side of the sun visor on the passenger side of the vehicle.

Lee then asked Neuhoff who owned the suitcases and was told Neuhoff owned them. Christopher had Neuhoff get out of Lee's vehicle; Lee took the suitcases from the vehicle where they had been found, carried them to his own vehicle, placed one of them on the car's hood, asked Neuhoff if there was anything in them Neuhoff did not want Lee to see; was told no; asked Neuhoff's permission to open it; was told he might, and opened the suitcase and examined its contents. A similar procedure was followed as to the second suitcase. Usable quantities of marijuana were found in both; in one was found also paraphernalia for injecting narcotics.

The whole process occupied about 15 minutes.

Vermouth testified as a witness on the issue whether there was an unreasonable search and seizure; Neuhoff did likewise. Neither testified

as to the ownership of either the billy, the suitcases or the open knife. Neither testified in affirmance or denial of the officer's testimony as to what Vermouth and Neuhoff had said about ownership of any of those articles. Neuhoff was asked by his counsel the question, "Do you remember having a conversation with the officer about those suitcases?" To that Neuhoff made no response until told he could answer the question yes or no, when he said yes.

When asked by his counsel as to whose car he was driving, Vermouth said, "I was driving a friend of mine's car—a friend who lives in my hometown."

Later, his counsel asked him a question which, and the answer given, were as follows: "Q. When you were first stopped, did you give some explanation as to who the owner of the car was? A. Yes, I gave the explanation that I just gave to the Court, that it belonged to a friend of mine who was apparently back in my home town." Such an answer given by the driver of a car who is unaware of the location of the registration certificate is not a satisfactory answer or one likely to dispel suspicion. In *People* v. *Clark,* 2 Cal.App.3d 510, 518 [82 Cal.Rptr. 682], the court observed: "The vehicle had no indicium of ownership; the riders could give no satisfactory explanation of ownership—only that a vaguely described relative had loaned it to them."

■ We answer the threshold question whether Lee properly halted the car because one of the tail lights had a crack in it ½ to ¾ inches wide, through which white light was being emitted, in the affirmative, as both the magistrate and the superior court judge did.[1]

■ Because Lee's action in stopping the car was proper, it was likewise proper to ask for the driver's license and the evidence of the car's registration.

When the driver was unable to produce the registration certificate and said the car belonged to someone else, it was reasonable and proper for the officers to look in the car for the certificate. Indeed, Vermouth said he told one of the officers to look in the glove compartment.

The right to search in a car for indicium of ownership which the driver is unable to produce is upheld in *People* v. *Mermuys,* 2 Cal.App.3d 1083, 1088 [82 Cal.Rptr. 902]. (*People* v. *Grubb,* 62 Cal.2d 614 [47 Cal.Rptr. 772, 408 P.2d 100].)

---

[1]The case is easily distinguished from *People* v. *Frankin,* 261 Cal.App.2d 703 [68 Cal.Rptr. 231], which held there was not reasonable cause to stop a car bearing a 1965 Illinois license plate for the sole purpose of ascertaining if the car's registration had expired, when in fact the registration was valid for another five days.

The circumstances that two persons with out-of-state driver's licenses were in possession of a vehicle with California license plates, not owned by either of them, and the driver's ignorance as to the registration certificate, taken with the lateness of the hour, made it reasonable to ask the two men out of the car and make a superficial search for possible weapons.

In the course of the authorized and reasonable search for the registration certificate, Christopher came in contact with the 5-inch open blade of a pocket knife, and then saw a billy.

At that point there was probable cause to arrest Vermouth at least for possession of contraband, possession of which was a felony. The vehicle was on a public highway, in mechanically operable and mobile condition.

In those circumstances it was permissible to search at the place of arrest and as incident thereto every part of the vehicle and any closed containers within it for other weapons or contraband. (*Chambers* v. *Maroney,* 399 U.S. 42 [26 L.Ed.2d 419, 90 S.Ct. 1975]; *Busby* v. *United States,*[2] 296 F.2d 328, 330; *Sugarman* v. *United States,* 35 F.2d 663, 665; *People* v. *Lopez,* 60 Cal.2d 223 [32 Cal.Rptr. 424, 384 P.2d 16]; *People* v. *Evans,* 240 Cal.App.2d 291 [49 Cal.Rptr. 501]; *People* v. *Gilmore,* 211 Cal. App.2d 35 [27 Cal.Rptr. 59]; *Bethune* v. *Superior Court,* 11 Cal.App.3d 249 [89 Cal.Rptr. 690]; *People* v. *Glancy,* 142 Cal.App.2d 669 [299 P.2d 18]; *People* v. *Jackson,* 241 Cal.App.2d 189, 193 [50 Cal.Rptr. 437]; *People* v. *Carnes,* 173 Cal.App.2d 559 [343 P.2d 626].)

In *People* v. *Jackson, supra,* 241 Cal.App.2d 189, 193, the court said: "We see no limitation in the cases limiting the permissible search to that

[2]In *Busby* v. *United States,* 296 F.2d 328, 330, some of the circumstances were: "When McDonald arrived at the automobile which Ryder had stopped, there were three men in the car—two men in the front seat and one in the rear. McDonald then directed the three men to step out of the automobile. When the doors of the automobile opened to permit the men to get out the dome light in the automobile went on and the interior of the car was illuminated by this light. McDonald then saw a sawed-off shotgun lying in the back of the car, partially under the seat.

"McDonald testified that prior to the time he saw the shotgun he did not in any way move the seat of the automobile forward or backward. After the shotgun had been discovered by McDonald, the men were searched and the car was searched. A loaded Mauser automatic pistol was found under the rear seat, and under the right front seat a 25-calibre Colt automatic pistol with a bullet in the chamber was found. Busby, Iman and Wayman all denied any knowledge of the guns." The court observed at page 331: "There was no arrest or search in the instant case until after the illegally possessed weapon was disclosed. An arrest is defined in California as 'taking a person into custody.' No one had been taken into custody in this case until after the shotgun which gave rise to probable cause was seen. Certainly not every police practice constitutes an arrest or search. . . . If defendants are stopped for having faulty lights and the policeman opens the car door and interrogates the defendants there has been no arrest or search."

portion of the automobile immediately accessible to the arrestee just before the arrest. In *People* v. *Burke, supra,* the articles seized were also found in the locked trunk of the automobile, yet there is nothing in the opinion to indicate that this in any way determined the result. The reason why the search was illegal was said to be because it was 'too remote in time and place.' "

*Mozzetti* v. *Superior Court,*[3] 4 Cal.3d 699, 711-712 [94 Cal.Rptr. 412, 484 P.2d 84], which held a warrantless examination of the contents of a suitcase in a vehicle to be impounded by the police for the purpose of inventorying the contents was a search within the meaning of the Fourth Amendment to the federal Constitution, contains language which persuades to the same conclusion: "We conclude that there were no circumstances in the instant case to justify the search of the contents of petitioner's automobile without a warrant. The search was not incident to lawful arrest, based on probable cause to believe the vehicle contained contraband. . . ."

We disregard the question of consent to search the suitcases.[4] For that reason such cases as *People* v. *Cruz,* 61 Cal.2d 861 [40 Cal.Rptr. 841, 395 P.2d 889], *People* v. *Daniels,* 16 Cal.App.3d 36 [93 Cal.Rptr. 628], *People* v. *Murillo,* 241 Cal.App.2d 173 [50 Cal.Rptr. 290], and *People* v. *Stage,* 7 Cal.App.3d 681 [86 Cal.Rptr. 701], are inapplicable.

A claim by the passenger in the vehicle of ownership of the container did not take away the right to search the container even though there were not probable cause to arrest the passenger.[5] A suspect, by his self-

[3]Followed by *People* v. *Denman,* 19 Cal.App.3d 632 [97 Cal.Rptr. 23], where the contents of a vehicle were inventoried following the issuance of a citation for a traffic violation. (See also *People* v. *Van Sanden,* 267 Cal.App.2d 662 [73 Cal.Rptr. 359].)

[4]On that subject the trial judge said: "And this brings us to the next point, the question of consent. I don't weigh the evidence in these things usually unless I can look in the eyes of the witnesses. But here again, I would say this, I don't see the basis for the arrest of the passenger, and therefore the fact that he was apparently arrested, and if consent was in fact obtained during the time while he was under an illegal arrest, this would be the Haven doctrine, the consent inextricably bound up and interwoven with the illegal arrest. So I would think if there was consent obtained, it probably would be invalid under the Haven doctrine, People v. Haven."

[5]We are not concerned, as in *Nugent* v. *Superior Court,* 254 Cal.App.2d 420, 427 [62 Cal.Rptr. 217], with the search of a suitcase after it had been removed from a car and carried into a motel by a man for whose arrest probable cause did not exist. There the only justification for the search was that the man with the suitcase was a companion of Nugent, for whose arrest for giving a check without sufficient funds there was probable cause; the police had no reason to believe the man with the suitcase knew the condition of Nugent's bank account. In that case the court observed: "[H]ere the suitcase was not in Nugent's possession when he was arrested and there

serving declaration, does not exclude himself from a search that as to him is otherwise reasonable and justified.

■ Lee was not bound to accept the statement by Vermouth that he was responsible for the billy, nor to accept Neuhoff's claim of ownership of the suitcases.

As a police officer in the field Lee was not the ultimate trier of fact. His duty in the situation which confronted him was to act upon observed objective facts. If such facts made a certain course of police conduct reasonable, Lee was not required to abandon that course of conduct because of the statements of an interested person, possibly involved in the commission of serious crime.

Where several persons might reasonably be suspected of participation in a crime known to have been committed, it is not the policeman's burden to base a decision whether to arrest all upon the statement of one claiming total responsibility, or of another denying culpability.

In *People* v. *Glancy, supra,* 142 Cal.App.2d 669, 675, the court said: "[T]he jury was not required to believe defendant's story to the effect that a mysterious stranger left the suitcase in defendant's automobile." (Cf. *People* v. *Ortega,* 2 Cal.App.3d 884 [83 Cal.Rptr. 260].)

If the jury is not required to believe every statement or disclaimer of the defendant on trial, still less so is the police officer engagd in the investigation of crime.

■ Whether there is probable cause to arrest more than one occupant of a vehicle halted by the police on a public highway for a felony based upon possession of contraband observed in the car generally depends upon the facts in a given case. (*People* v. *Lopez, supra,* 60 Cal.2d 223; *People* v. *Evans, supra,* 240 Cal.App.2d 291; *People* v. *Carnes, supra,* 173 Cal. App.2d 559; *People* v. *Ortega, supra,* 2 Cal.App.3d 884; *Bramlette* v. *Superior Court,* 273 Cal.App.2d 799 [78 Cal.Rptr. 532].) That is true also as to probable cause to arrest more than one occupant for theft or unauthorized use of the vehicle. (*People* v. *Clark, supra,* 2 Cal.App.3d

---

is no evidence that either the officers or the informant saw the suitcase in Nugent's possession before the arrest. Also there is no evidence that the car from which the suitcase was taken belonged to Nugent."

510; *People* v. *Kelley,* 264 Cal.App.2d 212 [70 Cal.Rptr. 612]; *cf.* *People* v. *Williams,* 9 Cal.App.3d 565 [88 Cal.Rptr. 349].)[6]

The question whether there was probable cause to arrest Neuhoff for possession of the billy may be passed upon without regard to Vermouth's claim of ownership of the billy and opened knife.

It might be reasonably inferred from the facts that there was a billy at hand for Vermouth, and an opened 5-inch knife just in front of and within reach of Neuhoff, considering they were abroad together in a moving vehicle at 3:30 o'clock in the morning, there was an alliance between them, either defensive or offensive. There was then probable cause to arrest both for possession of the billy.

When the committing magistrate heard the testimony he had additional facts not known to Lee when he first placed the two occupants of the car under arrest. Each of them carried a not insignificant amount of cash on his person; that, with the other circumstances added to the probability the weapons within reach of the two men were for their joint protection.

In considering the propriety of a motion to set aside an information pursuant to Penal Code section 995, the reviewing court may not substitute its judgment as to the weight of the evidence for that of the committing magistrate. If there is some evidence in support of the information, the court will not inquire into the sufficiency thereof. The reviewing court is only to determine whether the magistrate, acting as a man of ordinary caution or prudence, could conscientiously entertain a reasonable suspicion that a public offense had been committed in which the defendant had participated. (*People* v. *Reed,* 190 Cal.App.2d 344, 353 [11 Cal. Rptr. 780].) Although the magistrate, in reaching his decision, may weigh the evidence, resolve conflicts, and give or withhold credence to witnesses, such a balancing of the evidence is not within the powers of a tribunal reviewing the magistrate's order. (*Perry* v. *Superior Court,* 57 Cal.2d 276, 283-284 [19 Cal.Rptr. 1, 368 P.2d 529].)

The arrest of both defendants was based upon probable cause that both were in possession of the billy; the consequent search of the

[6]*People* v. *Williams,* 9 Cal.App.3d 565 [88 Cal.Rptr. 349], held there was not on the record before the court probable cause to arrest for auto theft a passenger in a stolen vehicle and thereafter to search him as a result of which marijuana was found in his pockets.

vehicle and suitcases was not unreasonable and the evidence found therein should not have been suppressed.

The committing magistrate had probable cause to hold Neuhoff for trial for possession of the billy.

The orders appealed from are reversed.

Brown (Gerald), P. J., and Coughlin, J.,* concurred.

Respondents' petition for a hearing by the Supreme Court was denied January 13, 1972. Peters, J., Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.